IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RODNEY TOW, TRUSTEE, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | |
| | § | |
| T. PAUL BULMAHN, LELAND TATE, ALBERT L. REESE, JR., GEORGE R. MORRIS, KEITH R. GODWIN, PAULINE VAN DER SMAN-ARCHER, ISABEL PLUME, ROBERT M. SHIVERS III, G. ROSS FRAZER, JOHN TSCHIRHART, BURT A. ADAMS, ARTHUR H. DILLY, BRENT M. LONGNECKER, ROBERT J. KAROW, GERARD J. SWONKE, CHRIS A. BRISACK, GEORGE R. EDWARDS, AND WALTER WENDLANDT, | § | CIVIL ACTION NO. 4:15-CV-01626 |
| | § | |
| DEFENDANTS. | § | |

**DEFENDANTS' JOINT MOTION TO TRANSFER VENUE
TO THE EASTERN DISTRICT OF LOUISIANA**

## I.  INTRODUCTION

Pursuant to 28 U.S.C. § 1404 and the Fifth Circuit's first-to-file rule, Defendants jointly move to transfer this case to the United States District Court for the Eastern District of Louisiana ("Eastern District of Louisiana"). The Court should transfer this case to the Eastern District of Louisiana under the first-to-file rule because there is substantial overlap between this case and four consolidated actions pending since 2013 before Chief Judge Sarah Vance in the Eastern District of Louisiana.

As discussed in more detail below, both the above-captioned case, and the consolidated actions pending in the Eastern District of Louisiana, arise from the same set of core facts. Specifically, all of these actions concern plaintiffs' allegations that defendants (all of whom are former officers or directors of ATP Oil & Gas Corporation, or "ATP") mishandled or failed to adequately disclose the deterioration of ATP's financial condition in the wake of the April 2010 Deepwater Horizon incident and oil spill, and the resulting government moratoria. The above-captioned case and the consolidated actions pending in the Eastern District of Louisiana have many of the same former ATP officers and directors as defendants (the above-captioned action includes some defendants who are not parties to the other actions). These cases will require the production of similar documents and depositions of the same individuals. In several rulings made to date, Judge Vance in the Eastern District of Louisiana has already considered the core facts at issue, and going forward, Defendants submit that there is a significant risk of inconsistent rulings on important issues if this case is not transferred to the Eastern District of Louisiana. Furthermore, transferring this case to the Eastern District will maximize judicial economy because this Court will not have to duplicate Judge Vance's efforts or develop its own deep understanding of the complex factual issues underlying the claims.

## II.  BACKGROUND

The above-captioned case and the actions pending in the Eastern District of Louisiana concern the same core facts concerning ATP and its operations and

finances between April 2010 and its August 2012 bankruptcy filing. Before filing bankruptcy in 2012, ATP engaged in the acquisition, development, and production of oil and natural gas properties. On April 20, 2010, a well blowout on the drilling rig Deepwater Horizon resulted in an oil spill of unprecedented proportions in the Gulf of Mexico. Soon thereafter, the Federal Government issued several moratoria on deep-water drilling of indeterminate duration that ultimately ended much of ATP's oil and gas exploration and production activities for nearly a full year.

The drilling moratoria resulted in tens of millions of dollars in standby costs for ATP and, at the same time, delayed revenues from the wells that ATP had planned to complete and bring online for production. ATP had spent over $1 billion in infrastructure construction and other capital expenditures related to ATP's wells in the Gulf of Mexico. As the drilling moratoria continued without relief, over time, ATP's actual and projected cash flow was impacted. Although production increased in 2010, ATP did not survive and filed for bankruptcy on August 17, 2012.[1]

Before the above-captioned case was filed, four other actions were filed by ATP noteholders and shareholders and consolidated in the Eastern District of Louisiana.[2] First, on May 24, 2013, a putative class action, *Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn et. al.*, No. 2:13-cv-03935-CJB-SS

---

[1] ATP filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. On June 26, 2014, the bankruptcy case was converted to a Chapter 7 proceeding. *See* Complaint in the above-captioned case, a copy of which is attached as Exhibit "1" hereto, ¶¶ 26-27.

[2] In addition to these actions, on April 20, 2013, ATP filed in the Eastern District of Louisiana a separate action seeking damages against BP Exploration & Production, Inc. and other defendants, as *ATP Oil & Gas Corp. v. BP Exploration & Production, Inc., et al.*, No. 2:13-cv-01962.

(the "Noteholder Action"), was filed in the Eastern District of Louisiana on behalf of noteholders under a $1.5 billion note offering, alleging violations of the federal securities laws against ATP officers and directors.

Second, three separate shareholder class actions were also filed (the "Shareholder Actions"). On August 5, 2013, *Neiman v. Bulmahn et. al.*, No. 4:13-cv-02274, was filed against ATP officers and directors in the Southern District of Texas, alleging violations of the federal securities laws. On August 30, 2013, a second case, *Stackhouse v. Bulmahn et. al.*, No. 4:13-cv-02557, was filed in the Southern District of Texas, alleging violations of the federal securities laws. Judge Kenneth Hoyt consolidated these first two Shareholder Actions, and transferred them to the Eastern District of Louisiana on October 4, 2013, pursuant to the Fifth Circuit's first-to-file rule.[3] On October 23, 2013, a third case, *Mansfield v. Bulmahn et. al.*, No. 2:13-cv-06233, was filed against ATP officers and directors in the Eastern District of Louisiana.

In the Eastern District of Louisiana, the court entered orders on October 16 and November 8, 2013 consolidating the Noteholder Action and Shareholder Actions.[4] In addition, the court on September 26, 2014 denied a motion to sever these actions, finding common questions of law and fact to exist.[5] In particular, the court noted (citing one of the parties' own language) that "the actions all involve

---

[3] *See* attached as Exhibit "2" hereto a copy of Judge Hoyt's October 4, 2013 Order.
[4] *See* attached as Exhibit "3" hereto, *in globo*, a copy of the two October 16, 2013 Orders and the November 8, 2013 Order. The October 16, 2013 Orders consolidated the *Stackhouse* and *Neiman* cases into the Noteholder Action. The November 8, 2013 Order further consolidated the *Mansfield* case into these actions.
[5] *See* attached as Exhibit "4" hereto a copy of the September 26, 2014 Order.

4

allegations related to ATP's deep water drilling operations in 2010," and that there was "significant factual overlap."[6] The consolidated Noteholder Action and Shareholder Actions are currently pending before Chief Judge Sarah Vance of the Eastern District of Louisiana, under the lead case, *Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn et. al.*, No. 2:13-cv-03935-SSV-SS.

Both the cases pending in the Eastern District of Louisiana, and the above-captioned case pending in this Court, arise from the losses ATP suffered in the aftermath of the April 2010 Deepwater Horizon incident and oil spill, and the resulting government moratoria. More specifically, these actions all concern plaintiffs' allegations that defendants mishandled or failed to adequately disclose the deterioration of ATP's financial condition in the wake of the April 2010 Deepwater Horizon incident and oil spill, and leading up to ATP's bankruptcy filing in August 2012.

In the Eastern District of Louisiana cases, the court held hearings and Judge Vance authored 163 pages of opinions in connection with these cases.[7] As discussed in more detail below, these opinions (in the context of motions to dismiss) have considered many of the same factual circumstances cited in the Complaint in this matter. Simply put, Judge Vance has a deep understanding of ATP's business and operations, and the complex factual issues giving rise to the claims in all these related cases.

---

[6] *See id.* at pp. 5-6.
[7] *See* Exhibit "4" hereto, and copies of Orders attached hereto as Exhibits "5" and "6." This is in addition to proceedings in the court prior to February 2014 before Judge Carl J. Barbier, who transferred the case to Judge Vance at that time.

## III. ARGUMENT

This case should be transferred to the Eastern District of Louisiana pursuant to the first-to-file rule because there is substantial overlap between this case and the Noteholder and Shareholder Actions being litigated in the Eastern District of Louisiana.

Under the Fifth Circuit's first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). The rule is designed to maximize the values of judicial economy, consistency, and comity between sister courts. *Id.* at 604 (stating that the first-to-file rule is meant "to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court"). The three primary concerns of the rule are: (1) to avoid the waste of duplication; (2) to avoid rulings which may entrench upon the authority of sister courts; and (3) to avoid piecemeal resolution of issues that call for a uniform result. *RadiaDyne, L.L.C. v. Polyzen, Inc.*, 2012 WL 626216, at *1 (S.D. Tex. Feb. 24, 2012).

When related cases are pending in two separate courts, the second-filed court must only determine whether the issues in the two actions "might substantially overlap." *Cadle*, 174 F.3d at 606. Once the second-filed court decides that there *might* be substantial overlap between the cases, the case should be transferred to the judge with the first-filed case and it is up to the first-filed court to resolve the

6

question of whether both cases should proceed. *Cadle*, 174 F.3d at 605-06; *see also CitiFinancial Corp. v. Harrison*, 453 F.3d 245, 251 (5th Cir. 2006) (once the potential for substantial overlap is established, "the prudent—and perhaps required—course would [be to] transfer the matter to the judge with the first-filed case").

The first-to-file rule does not require that the cases be identical. *Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011). Instead, the crucial inquiry is whether there is substantial overlap between the core issues of the cases and whether much of the proof adduced in the cases would likely be identical. *Id*. Nor does the first-to-file rule require that the causes of action in the cases be identical. *RadiaDyne*, 2012 WL 62621, at *2 ("Although the causes of action in the two lawsuits are different… inconsistent rulings on th[e] important issue[s] could occur if the cases remain separate"). To avoid the first-to-file rule, plaintiff must demonstrate compelling circumstances that caution against transfer. *Stewart Title Guaranty Co. v. First American Title Ins. Co.*, Civil Action No. H-15-0354, 2015 WL 1393134, at *1 (S.D. Tex. Mar. 25, 2015) (internal citations omitted).

Although this is a derivative action for breach of fiduciary duty and the Noteholder and Shareholder Actions currently pending in the Eastern District are securities class actions, there is substantial overlap between these cases warranting transfer to the Eastern District of Louisiana. First, there is significant overlap between the factual allegations in all of these cases, and Judge Vance has already considered many of these factual circumstances in depth. Second, discovery and

7

applicable documents and witnesses will be very similar between the actions. Third, there is an overlap between the legal elements required to establish the claims asserted in each of the lawsuits. Fourth, there is a danger of inconsistent rulings in the event that the actions are not consolidated before a single court.

1. <u>The Cases All Involve the Same Core Factual Circumstances.</u>

Both the Noteholder and Shareholder actions, and the above-captioned case, concern the same core factual circumstances – plaintiffs' allegations that defendants mishandled or failed to adequately disclose the deterioration of ATP's financial condition in the wake of the impact of the April 2010 Deepwater Horizon incident and oil spill, and the resulting government moratoria. Each of the main factual allegations in the above-captioned case concerns the same core factual circumstances at issue in the Noteholder and Shareholder actions. In addition, Judge Vance has already considered many of these factual circumstances in three separate opinions totaling 163 pages.

A. <u>Impact of Oil Spill and Moratoria on ATP</u>

First, in the above-captioned suit, Plaintiff asserts that defendants breached their fiduciary duties to ATP because defendants failed to appropriately respond to "the impending insolvency" and deterioration in ATP's financial condition in the wake of the Deepwater Horizon oil spill and government moratoria.[8] Plaintiff asserts that "as early as May 2010, ATP began to have problems with liquidity due

---

[8] *See* Exhibit "1," ¶ 46 and ¶¶ 41-74.

8

to the Oil Spill and foreseeable government response and entered the zone of insolvency, which the Directors and Officers knew."[9]

These are also core issues in the Noteholder and Shareholder Actions. In the September 26, 2014 and November 21, 2014 opinions on the motions to dismiss the Noteholder Action and Shareholder Actions (respectively), Judge Vance considered at length and in detail the factual circumstances concerning ATP's liquidity, financial strength, and viability in the period between April 2010 and August 2012, in the wake of the Deepwater Horizon oil spill.[10] For example, Judge Vance noted that ATP's disclosures indicated "that the moratoria were already having a material adverse impact on ATP's liquidity and revenue and that they were likely to continue to do so in the future."[11] Nevertheless, as Judge Vance also noted, various other facts indicated that "defendants [officers of ATP] had crafted a strategy they felt would allow ATP to survive the effects of the moratoria." [12] In addition, one of the

---

[9] *See* Exhibit "1," ¶ 46; *see also* ¶ 44 (Plaintiff alleges that Defendants "failed to take actions to account for the unavoidable effects of the Oil Spill on the finances and business of ATP and instead took actions that increased ATP's damages and precipitated ATP's ultimate demise.").

[10] *See* Exhibit "5" at pp. 12-23 and 47-54 (Noteholder Action); Exhibit "6" at pp. 27-42 and 69-84 (Shareholder Action).

[11] *See* Exhibit "6" at p. 36 (Shareholder Action).

[12] *See* Exhibit "6" at p. 79 (Shareholder Action). Judge Vance's November 21, 2014 opinion further stated: "The fact is, investors knew that ATP was highly leveraged and that it needed to borrow money, sell assets, and enter into various financing transactions to preserve liquidity. ATP disclosed this fact often and in considerable detail. Plaintiffs simply do not point to any undisclosed facts that would seriously undermine their projections regarding ATP's future prospects. Moreover, that ATP was highly leveraged does not mean it was not liquid. ATP's numerous financing arrangements, asset sales, agreements to delay payments to vendors, and sales of ORRIs do not demonstrate that the defendants felt ATP was experiencing a liquidity crisis or that it would not be able to pay its obligations for the next 12

9

central allegations in the actions pending in the Eastern District of Louisiana concerns whether defendants' projection of a substantial increase in production in 2011 was false or misleading.[13]

### B. ATP's Development Projects and Clipper Wells Project

In the above-captioned suit, Plaintiff also asserts that defendants caused ATP to focus on "long term projects the company could no longer afford" during the period from April 2010 to August 2012.[14] Among other things, Plaintiff references ATP's "Clipper" project which involved construction of a costly pipeline to allow production from ATP's "Clipper" wells, and Plaintiff alleges that the costs of such pipeline "ballooned" to over $200 million.[15]

ATP's "Clipper" project is also a major focus of the actions pending in the Eastern District of Louisiana. Judge Vance's November 21, 2014 opinion discusses the Clipper project at length, including the funds needed to complete the project in 2012, and the reserves and potential of the Clipper wells.[16] As Judge Vance's opinion notes, the Shareholder Action alleges that certain statements made by defendants in securities registration materials "were misleading because defendants knew or were reckless in not knowing that 'ATP did not have, nor could it generate or borrow, the substantial funds necessary to connect the Clipper [wells]

---

months. Rather, they suggest that defendants had crafted a strategy they felt would allow ATP to survive the effects of the moratoria." (p. 79)

[13] *See* Exhibit "5" at pp. 47-54 (Noteholder Action); Exhibit "6" at p. 39, n. 77 (Shareholder Action).
[14] *See* Exhibit "1," ¶¶ 47-57.
[15] *See* Exhibit "1," ¶ 57.
[16] *See* Exhibit "6"at pp. 53-69 (Shareholder Action).

10

to the production facility, and that the Clipper [wells] would not come online in 2012.'"[17]

### C. ORRI and NPI Financing

Also, in the above-captioned suit, Plaintiff asserts that defendants authorized over $600 million of financing through net profits interests ("NPI") and overriding royalty interests ("ORRI") "to provide ATP short term cash at the expense of its long term viability," which Plaintiff alleges "destroy[ed] any long term prospects for the company."[18] This financing is also a major focus of the Noteholder and Shareholder Actions. As Judge Vance noted, the Amended Complaint in the Noteholder Action alleged that a certain securities registration statement was "false and misleading because it failed to state that in 2009 and 2010, defendants had engaged in "disguised financings" [NPI and ORRI transactions] that caused ATP to be in violation of its credit and debt agreements as of the Effective Date, placing it at risk of default."[19] In the Shareholder Action, the plaintiffs' most recent complaint alleges that "ATP's existing production was so burdened by NPIs and ORRIs that it drastically curtailed its ability to obtain further financing and threatened its very existence."[20]

---

[17] *See* Exhibit "6" at p. 56 (Shareholder Action).
[18] *See* Exhibit "1," ¶¶ 60, 62.
[19] *See* Exhibit "5" at p. 55 (Noteholder Action).
[20] *See* attached as Exhibit "7," Plaintiffs' Amended Consolidated Complaint in the Shareholder Actions, filed on January 20, 2015, at ¶ 93.

## 2. The Overlap and Need for Coordination of Discovery, Documents, and Witnesses Also Weigh in Favor of Transfer.

As discussed above, much of the underlying factual predicate for this derivative action is identical to the Shareholder and Noteholder Actions, and will require the production of similar documents and depositions of the same individuals. The following ATP officers and directors are defendants in both the above-captioned action and in the Noteholder Action: Paul Bulmahn, Albert Reese, Jr., Keith Godwin, Burt Adams, Arthur Dilly, Brent Longnecker, Robert Karow, Gerard J. Swonke, Chris Brisack, George Edwards, and Walter Wendlandt. (The above-captioned action includes some additional defendants who are not parties to the other actions; and some of the foregoing defendants are not parties to the Shareholder Action.)

As the court presiding over the Enron bankruptcy and a related adversary proceeding recognized, the need to coordinate and centralize discovery and witnesses is a significant consideration, and weighs in favor of transfer of the case to the district in which other cases are pending. *Enron Corp. v. Dynegy Inc. (In re Enron Corp.)*, 2002 WL 32153911 (Bankr. S.D.N.Y. April 12, 2002) was, like this case, an adversary case brought by the bankruptcy debtor's estate seeking damages. Also in that case, the defendant sought transfer of venue from the district where the bankruptcy was pending (Southern District of New York) to the district where several securities class actions were pending relating to Enron (Southern District of Texas). The bankruptcy court granted the motion to transfer venue, in part because discovery between the actions would overlap, and because the judge presiding over

the securities class actions was well-positioned to coordinate discovery. The court stated: "[T]his Court concludes that rather than having discovery proceed in a piecemeal fashion, coordinating discovery before a single judge will necessarily facilitate the disposition of this litigation. Hence it would be economical and efficient for Enron's bankruptcy estates to address these issues in one location before one judge." *Id.* at *6.[21]

> 3. <u>The Overlap Between Legal Elements Also Supports Transfer.</u>

There is also an overlap between the legal elements required to establish the claims asserted in each of the lawsuits. *See RadiaDyne*, 2012 WL 62621, at *2 (stating that, under the first-to-file rule, causes of action do not have to be identical for cases to substantially overlap). Even though the Noteholder and Shareholder cases assert federal securities claims and this derivative action asserts claims for breach of fiduciary duty, there is substantial overlap between the securities and derivative claims—defendants' state of mind.[22] Plaintiff alleges that "[d]efendants acted in ways that constituted negligence, gross negligence, or intentional

---

[21] The court further noted that "discovery in [the adversary proceeding] will overlap much of the time period relevant to the Securities Litigation," *Id.* at *6; and "Upon examination of Judge Harmon's order [issued in other Enron-related litigation in the Southern District of Texas], it is apparent that many of the facts alleged before Judge Harmon are substantially similar to the facts of this adversary proceeding." *Id.* at *7.

[22] *Erica P. John Fund, Inc. v. Halliburton Co.*, 718 F.3d 423, 429 (5th Cir. 2013) (listing elements of a Section 10(b) claim as "(1) a material misrepresentation, (2) scienter (deceptive intent), (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation"); *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 379 (S.D. Tex. 2011) (listing the elements of a Section 11 claim as "(1) an omission or misstatement (2) pf a material fact required to be stated or necessary to make other statements made not misleading" and noting that the materiality element is identical to materiality in a 10(b) claim).

13

misconduct," including "over-monetiz[ing] ATP's assets to maintain the false appearance of standard operations in the face of growing illiquidity."[23] The cases will require legal determinations on the elements of falsity, materiality, and the defendants' state of mind.

4. <u>Transfer is Necessary to Prevent the Possibility of Inconsistent Rulings</u>.

The resolution of this case will require the judge to make factual determinations that will significantly overlap with the Noteholder and Shareholder cases and potentially result in inconsistent rulings. Because of the substantial overlap between this derivative action and the securities class actions pending in the Eastern District, there is a significant risk of inconsistent rulings by the two courts—especially since Judge Vance has already issued several orders and the opinions referenced above and attached as Exhibits "4" through "6."

To take just one example, as discussed above, one of the issues in the actions pending in the Eastern District of Louisiana may be the issue of whether ATP had or could generate the liquidity necessary to complete the Clipper Wells project.[24] In the event that the Eastern District of Louisiana court were to issue a finding that ATP did not have, or could not generate, the liquidity necessary to complete the Clipper Wells project, this would clearly impact the above-captioned suit. Specifically, it would impact Plaintiff's allegation in this suit that ATP's directors and officers mismanaged the Clipper project and the costs thereof. Accordingly, this

---

[23] *See* Exhibit "1," ¶¶ 78, 82.
[24] *See* Exhibit "6" at pp. 53-69 (Shareholder Action).

14

derivative case should be transferred to the Eastern District, where the first-filed Noteholder and Shareholder Actions are pending.

## IV. CONCLUSION

Defendants request that this case be transferred to Chief Judge Vance of the Eastern District of Louisiana pursuant to 28 U.S.C. § 1404 and the Fifth Circuit's first-to-file-rule.

Dated: July 15, 2015  Respectfully submitted,

*/s/ C. Davin Boldissar*
Omer F. Kuebel, III
La. Bar No. 21682, S.D. Bar No. 32595
C. Davin Boldissar
La. Bar No. 29094, S.D. Bar No. 1118823
LOCKE LORD LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130
Tel.: (504) 558-5100
Fax: (504) 681-5211

Alicia Castro
Texas Bar No. 24069705
S.D. Bar No. 2192250
LOCKE LORD LLP
600 Travis Street, Suite 2800
Houston, Texas 77002
Tel.: (713) 226-1200
Fax: (713) 223-3717

Brent Benoit
Texas Bar No. 00496198
S.D. Bar No. 20971
4203 Carlisle Ct.
Baytown, TX 77521
Tel.: (713) 416-0079

*Counsel for Defendants Chris A. Brisack, Arthur H. Dilly, Gerard J. Swonke, Brent M. Longnecker, Walter W. Wendlandt, Burt A. Adams, George R. Edwards and Robert J. Karow*

*/s/ Paul R. Bessette*
Paul R. Bessette
Texas Bar No. 02263050
S.D. Bar No. 22453
Michael J. Biles
Texas Bar No. 24008578
S.D. Bar No. 23146
James P. Sullivan
Texas Bar No. 24070702
Tyler W. Highful
Texas Bar No. 24083176
KING & SPALDING LLP
401 Congress Avenue, Suite 3200
Austin, Texas 78701
Tel.: (512) 457-2050
Fax: (512) 457-2100

*Counsel for Defendants T. Paul Bulmahn, Leland E. Tate, Albert L. Reese, Jr., George R. Morris, Keith R. Godwin, Isabel Plume, G. Ross Frazer, and John Tschirhart*

*/s/Mark D. Manela*
Mark D. Manela
Texas Bar No. 12894500
S.D. Bar No. 1821
MANELA LAW FIRM
440 Louisiana, Suite 2300
Houston, Texas 77002
Tel.: (713) 240-4843
Fax: (713) 228-6138

*Counsel for Defendant Robert M. Shivers III*

16

## **CERTIFICATE OF CONFERENCE**

I hereby certify that on July 15, 2015, I conferred by telephone and via email with Chris Lindstrom and Micah Dortch, Plaintiffs' counsel, regarding the foregoing Motion to Transfer Venue, and they were unopposed to the motion.

                                    */s/ Michael J. Biles*
                                    Michael J. Biles

# CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2015, I electronically filed the foregoing notice with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have consented to electronic notification. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all non-CM/ECF participants.

*/s/ Paul R. Bessette*
Paul R. Bessette
