UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RODNEY TOW, TRUSTEE                                    CIVIL ACTION

VERSUS                                                      NO. 15- 3141

T. PAUL BULMAHN, ET AL.                          SECTION "R" (1)


**<u>ORDER AND REASONS</u>**


Rodney Tow, the Chapter 7 bankruptcy trustee for ATP Oil and Gas Corporation, sues defendants—former officers of ATP—for fraudulent transfer.  Defendants move to dismiss the Trustee's complaint for failure to state a claim.[1]  For the following reasons, the Court grants the motion.


I.     **BACKGROUND**

   **A. Parties and Claims**

Rodney Tow is the Chapter 7 Trustee for ATP Oil and Gas Corporation. ATP was incorporated under Texas law in 1991.  Before filing for bankruptcy in August 2012, ATP engaged in the acquisition, development, and

---

[1]      R. Doc. 80.

production of oil and natural gas properties in the Gulf of Mexico and other locations.[2]

The Trustee originally sued eighteen defendants, most of whom are former officers or directors of ATP, for breaches of fiduciary duty, fraudulent transfer, civil conspiracy, and aiding and abetting breaches of fiduciary duty. In a previous order, the Court dismissed the Trustee's Second Amended Complaint.[3]  In doing so, the Court granted the Trustee leave to replead only two claims: (1) his claim that defendant Bulmahn breached his fiduciary duty of loyalty by causing ATP to enter unfavorable contracts to benefit "friends" at the corporation's expense; and (2) his constructive fraudulent transfer claim, in which he sought to void and recover cash and stock bonuses paid to defendants Bulmahn, Tate, Reese, Morris, and Godwin under Section 24.005 of the Texas Business and Commerce Code and Section 548(a)(1) of the Bankruptcy Code.

In the Trustee's Third Amended Complaint he asserts only the latter claim. The remaining defendants, therefore, are:

- T. Paul Bulmahn, former Chief Executive Officer and Chairman of ATP's Board of Directors;

- Leland Tate, former President of ATP;

---

[2]     R. Doc. 41 at 2.

[3]     R. Doc. 71.

- Albert L. Reese, Jr., former Chief Financial Officer;
- George R. Morris, former Chief Operating Officer; and
- Keith R. Godwin, former Chief Accounting Officer.

### B. Factual Background

On May 20, 2010, the Deepwater Horizon drilling rig exploded and sank in the Gulf of Mexico, creating "one of the most pervasive and devastating environmental disasters in the history of the United States."[4]  In response, the federal government issued moratoria on new and existing deepwater drilling in the Gulf of Mexico.[5]  Although the moratoria were eventually lifted, the Government instituted new rules and regulations that delayed the resumption of drilling and increased the cost of decommissioning deepwater wells.[6]  The Trustee alleges these developments deferred or eliminated many of ATP's streams of revenue and increased its costs of operation.[7]  As a result, ATP experienced immediate difficulties servicing its debt and paying expenses.[8]  The Trustee alleges that "as early as May 2010, ATP began to have problems with liquidity . . . and entered the zone of insolvency."[9]

---

[4]   R. Doc. 72 at 4.
[5]   *Id.* at 5.
[6]   *Id.*
[7]   *Id.* at 6.
[8]   *Id.*
[9]   *Id.*

Following the BP Oil Spill, ATP invested substantial sums in two capital projects. The first involved ATP's Cheviot Field in the North Sea. In late 2008, ATP contracted for the construction of a floating production platform, the "Octabuoy," which was to be deployed at the Cheviot Field upon completion in 2014.[10] The Trustee alleges that although initial estimates indicated that the Cheviot Field contained $702.5 million in proven undeveloped reserves and $1,120.1 million in probable undeveloped reserves, these estimates were decreased between January 1 and June 30, 2012.[11] The new figures suggested that the field contained only $25.5 million in proven undeveloped reserves and $538.8 million in probable undeveloped reserves.[12]

The second project involved ATP's efforts to obtain drilling licenses in the Eastern Mediterranean Sea for two ATP subsidiaries.[13] According to the Trustee, in or around June 2011, ATP provided funding for ATP East Med Number 1 B.V. ("ATP-EM-1") to purchase a share of three licenses off the coast of Israel.[14] The Trustee alleges that "it was estimated that ATP would

---

[10]    *Id.* at 7.
[11]    *Id.*
[12]    *Id.*
[13]    *Id.* at 8.
[14]    *Id.*

need to spend $250 million on those licenses before production."[15]   He further alleges that although ATP-EM-1 successfully acquired a share of all three licenses, the Israeli government seized ATP's interest in two of the licenses because "it was discovered that they were held in violation of Israeli law."[16]   As to the second ATP subsidiary, ATP East Med Number 2 B.V. ("ATP-EM-2"), the Trustee alleges that ATP funded the subsidiary's bids on unspecified "work" in the Eastern Mediterranean.[17]   He further contends that although "millions of dollars were spent," ATP-EM-2 was unable to obtain any drilling licenses.[18]

Ultimately, ATP proved unable to survive the disruptions caused by the BP Oil Spill and drilling moratoria.  On August 17, 2012, ATP filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Southern District of Texas.[19]   ATP's case was converted to a Chapter 7 proceeding on June 26, 2014, and Tow was appointed Trustee for ATP's estate.[20]

The Trustee contends that, despite ATP's poor performance and eventual bankruptcy, defendants Bulmahn, Tate, Morris, Reese, and Godwin

---

[15]    *Id.*
[16]    *Id.*
[17]    *Id.*
[18]    *Id.*
[19]    *Id.* at 4.
[20]    *Id.*

obtained a total of over $9 million in cash and $3.5 million in stock bonuses during the years 2010 and 2011.[21]

## C. This Lawsuit

The Trustee filed suit on behalf of ATP's estate against ATP's officers and directors in the Southern District of Texas.   Initially, the case was assigned to the Bankruptcy Court for the Southern District of Texas.  On June 29, 2015, Judge Gray Miller withdrew the bankruptcy reference and transferred the case to the District Court for the Southern District of Texas.[22] Defendants then moved to transfer the case under the first-to-file rule, arguing that the Trustee's complaint substantially overlapped with securities class actions that were being litigated before this Court.[23]   Judge Miller granted the motion on July 28, 2015 and transferred the Trustee's lawsuit to this Court.[24]

On July 27, 2015, the Trustee filed a four-count First Amended Complaint.[25]   On September 24, 2015, the Trustee amended his pleadings

---

[21]     *Id.*

[22]     R. Doc. 3.

[23]     R. Doc. 6.  In the Fifth Circuit, the first-to-file rule is a discretionary doctrine, which provides that "when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap."  *Cade Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999).

[24]     R. Doc. 9.

[25]     R. Doc. 8.

and filed a Second Amended Complaint.[26]   Following the Court's order resolving motions to dismiss the Second Amended Complaint, the Trustee filed a Third Amended Complaint, alleging fraudulent transfer based on the compensation that ATP paid to defendants in 2010 and 2011.  Defendants now move to dismiss the Third Amended Complaint.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true.  *Iqbal*, 556 U.S. at 678.  It need not contain detailed factual allegations, but it must go beyond labels, legal

---

[26]      R. Doc. 41.

conclusions, or formulaic recitations of the elements of a cause of action.  *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.  *Lormand*, 565 F.3d at 257.  If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed.  *Twombly*, 550 U.S. at 555.

## III.  DISCUSSION

In the Third Amended Complaint, the Trustee seeks to avoid cash and stock bonuses paid to defendants in 2010 and 2011 as fraudulent conveyances under the Texas Uniform Fraudulent Transfer Act ("TUFTA") and Section 548(a)(1) of the Bankruptcy Code.

Under TUFTA, a bankruptcy trustee may avoid a debtor's transfers that defraud the estate's creditors.  Tex. Bus. & Com. Code § 24.008(a)(1); *see also Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 437 (5th Cir. 2013). Fraudulent transfers are divided into two types: actual fraudulent transfers, and constructive fraudulent transfers.  Here, the Trustee alleges only

constructive fraud under section 24.005 of TUFTA.[27]   Section 24.005

provides that a transfer is constructively fraudulent if the debtor made the

transfer:

> without receiving a reasonably equivalent value in exchange for
> the transfer or obligation, and the debtor:
>
> (A) was engaged or was about to engage in a business or a
> transaction for which the remaining assets of the debtor were
> unreasonably small in relation to the business or transaction
> . . . .

Tex. Bus. & Com. Code § 24.005(a).

Similarly, under Section 548(a)(1) of the Bankruptcy Code, a

bankruptcy trustee may avoid a transfer that was made within two years

before the date the bankruptcy petition was filed if the debtor "received less

than a reasonably equivalent value in exchange for such transfer or

obligation" and either:

> was insolvent on the date that such transfer was made or such
> obligation was incurred, or became insolvent as a result of such
> transfer or obligation; was engaged in business or a transaction,
> or was about to engage in business or a transaction, for which any
> property remaining with the debtor was an unreasonably small
> capital; intended to incur, or believed that the debtor would
> incur, debts that would be beyond the debtor's ability to pay as
> such debts matured; or made such transfer to or for the benefit
> of an insider, or incurred such obligation to or for the benefit of

---

[27]    *See* R. Doc. 82 at 11.

an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B). Thus, to prevail on a constructive fraud claim under this provision, a plaintiff must plead and prove that: "(1) the debtor transferred an interest in property, (2) the transfer of that interest occurred within two years prior to the filing of the bankruptcy petition, (3) the debtor was insolvent on the date of the transfer or became insolvent as a result thereof, and (4) the debtor received less than reasonably equivalent value in exchange for such transfer." *In re Inspirations Imports, Inc.*, No. 13-4331, 2014 WL 1410243, at *2 (N.D. Tex. Apr. 3, 2014) (citing *In re GWI PCS 1 Inc.*, 230 F.3d 788, 805 (5th Cir. 2000)).

In dismissing the Trustee's fraudulent transfer claims in the Second Amended Complaint, the Court faulted the Trustee for providing no factual material to support the assertion that ATP did not receive reasonably equivalent value for its payments to defendants. The Third Amended Complaint does nothing to cure this deficiency.

The Trustee's factual allegations on this point remain essentially unchanged. The complaint still lacks any allegation that defendants' compensation was out-of-line with peer firms, or that defendants did not honestly and diligently perform their jobs. Instead, the Trustee simply includes additional facts concerning defendants' allegedly poor business

10

decisions.  The upshot of these allegations is that defendants "rolled the dice on the future of the company by leveraging all of the company's actual revenue producing properties."[28]  The Trustee, however, concedes that defendants "believed this may have been a sound business practice," even if the gamble "did not pay off as the company lost hundreds and hundreds of millions of dollars in 2010 and 2011."[29]

The Trustee's constructive fraudulent transfer allegations remain inadequate to survive a motion to dismiss. Allegedly poor executive performance, without more, does not state a plausible claim for fraudulent transfer.  *See Scouler & Co., LLC v. Schwartz*, No. 11-06377, 2012 WL 1502762, at *6 (N.D. Cal. Apr. 23, 2012) (finding allegation that "Asyst failed to receive reasonably equivalent value in exchange for this ill-advised bonus, which came at a time when [Asyst's former CEO] had failed to preserve the Company's financial position" insufficient to state constructive fraudulent transfer claim); *In re Hydrogen, L.L.C.*, 431 B.R. 337, 353 (Bankr. S.D.N.Y. 2010) (dismissing constructive fraudulent transfer claim in light of "a complete absence of facts supporting the allegation that the Debtor received

---

[28]   R. Doc. 72 at 9.

[29]   *Id.*

11

less than reasonably equivalent value"). The Trustee's complaint must therefore be dismissed.[30]

Further, as to ATP's solvency or the alleged size of its assets at the time of the transfer, the complaint remains conclusory, failing to point to any financial data showing that ATP was actually insolvent or had little capital when any of the alleged compensation was paid. The Trustee's allegation that "ATP's debts remained greater than its assets at fair valuation"[31] from May 2010 forward is a mere conclusion. In addition, ATP's 2011 10-K, which the Trustee refers to in the complaint, does not show that ATP's debts were greater than its assets at fair valuation at the time of each alleged transfer or say what its total asset value was or whether it could pay its debts as they became due at the time of each of the alleged transfers.

Finally, the Court finds that the Trustee's claims must be dismissed with prejudice. Even in this Third Amended Complaint, the Trustee is still "not making progress toward an acceptable complaint," and additional leave to amend is therefore unwarranted. *Bank of Am., N.A. v. Knight*, 725 F.3d

---

[30] Because it finds that the Trustee has still failed to satisfy the general pleading standards of Federal Rule of Civil Procedure 8(a), the Court again declines to resolve the parties' dispute over whether constructive fraudulent transfer must comply with the heightened pleading requirements of Rule 9(b).

[31] R. Doc. 72 at 7.

815, 819 (7th Cir. 2013). The Trustee's vague, conclusory allegations are particularly striking given that, as the trustee of ATP's estate, he has "ample access to [ATP's] books and records." *Id.* For these reasons, the Court finds that further leave to amend is not warranted in this case. *See id.* ("[I]n court, as in baseball, three strikes and you're out."); *see also Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit.").

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED. The Trustee's claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __4th__ day of January, 2017.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

13